OPINION
{¶ 1} Appellant, Steven M. Ludwick, appeals the judgment entered by the Ashtabula County Court of Common Pleas. Ludwick was convicted of four counts of rape, adjudicated a sexual predator, and sentenced to a cumulative prison term of twenty years.
 {¶ 2} Ludwick was playing in a recreational league softball game on Saturday, May 28, 2000. One of his friends, Erica Gammon ("Erica"), went with the victim, an eighteen-year-old female, to watch appellant play softball. Ludwick was temporarily living with Erica in her trailer. However, Ludwick testified that they were not in a boyfriend-girlfriend relationship. The victim was also a friend of Erica's, but she had never met Ludwick prior to the softball game.
 {¶ 3} After the softball game, the victim rode with Erica back to her trailer. Appellant and Brett Hague ("Brett"), Erica's neighbor, also arrived at the trailer. At some point, the group decided to drink alcohol. The victim gave Ludwick money to purchase beer, and Ludwick and Brett went to the store and bought a twelve-pack of beer. Brett also brought a bottle of liquor from his home.
 {¶ 4} Ludwick, Brett, and the victim were primarily drinking the beer. Erica became heavily intoxicated from drinking liquor. In an effort to sober up Erica, the victim drove Erica to McDonald's to get some food. During this time, the victim allegedly told Erica that she thought Ludwick was cute.
 {¶ 5} At some time in the afternoon, Ludwick's two young children were also at the trailer. Eventually, Ludwick drove the children to their mother's residence, which was very close to Erica's trailer. The victim rode with Ludwick on this trip. She testified that Ludwick acted normal during this trip.
 {¶ 6} The victim testified that Erica became very drunk and got into a fight with Ludwick. Ludwick decided to leave and offered the victim a ride home. The victim accepted the ride, because she did not have a vehicle and Erica was too intoxicated to drive. Ludwick took Erica's car, because his vehicle did not have proper registration. Ludwick stated he had permission to take Erica's car. However, Wendy Gammon, Erica's sister, spoke to Erica after Ludwick left and, then, called the police and reported the vehicle was taken without permission.
 {¶ 7} The victim testified that Ludwick asked her if she wanted to take a walk on the beach to talk. She agreed. On the beach, the victim stated that Ludwick attempted to kiss her. When she refused his advances, he threw her down on the sand. He removed her clothes and started to have vaginal sex with her. Next, he ordered her to perform oral sex on him. This was followed by more vaginal sex. Thereafter, Ludwick engaged in anal sex with the victim. The victim testified that this was painful, and when she screamed out in pain, Ludwick hit her in the mouth. She testified that Ludwick instructed her to insert her finger into her vagina and her rectum. She complied with this request, because she was afraid of what Ludwick would do to her if she refused. She testified that he engaged in vaginal sex with her again. The two saw a light, and the victim stated that Ludwick placed a handful of sand into her mouth and instructed her to swallow it. She did swallow some of the sand. Then, Ludwick again ordered her to perform oral sex on him, and she complied.
 {¶ 8} The victim testified that all the sexual acts were nonconsensual. She stated Ludwick threatened her throughout the incident, telling her that he had an uncle who would kill her and her family if she told anyone what happened. He further threatened her, saying she would end up in Lake Erie with a concrete block tied to her. She also revealed that Ludwick ordered her to give him "sucker bites" on his neck, so that no one would believe her story if she were to tell.
 {¶ 9} Ludwick testified on his own behalf. He stated that the victim was flirting with him throughout the day. He claims they were kissing each other at Erica's trailer. He testified that the vaginal, anal, and oral sex that occurred on the beach was consensual. He testified that the sucker bites were a result of the consensual encounter. He stated that he was unaware that the victim digitally penetrated her vagina or rectum. Finally, he denied threatening the victim in any way.
 {¶ 10} Following the events on the beach, the victim drove Erica's car to her mother's house. She drove because Ludwick said he could not. After arriving home, the victim's mother repeatedly asked her what happened, and the victim revealed that she had been raped. Her mother called the police.
 {¶ 11} The victim went to the local hospital in Ashtabula for an examination. Dr. Oelhaf examined the victim. He testified that the victim had rectal tearing. He also indicated the victim was very dirty and was covered with sand and plant material. He further testified that she had sand in her mouth. The victim was kept in the hospital overnight, so the doctors could perform a procedure to check the extent of the rectal tear.
 {¶ 12} Shortly after receiving the report that Ludwick had taken Erica's car without her permission, the police received the report of the rape. Knowing that the victim had left in Erica's car, the two reports were tied together. Shortly after the rape was reported, the vehicle was found at Erica's trailer. Ludwick was found by the car and arrested. He was taken to the police station, where he gave an oral statement.
 {¶ 13} As a result of the events that occurred on the beach, Ludwick was indicted on eight counts of rape. A bill of particulars was requested, which indicated counts one and two were for vaginal rape, counts three and four were for anal rape, counts five and six were for oral rape (fellatio), count seven was for forcing the victim to digitally penetrate her own anus, and count eight was for forcing the victim to digitally penetrate her own vagina. Ludwick entered a plea of not guilty to all of the charges.
 {¶ 14} Ludwick filed a motion to suppress any physical evidence and any oral or written statements. A hearing was held on the motion. At the hearing, Detective Robert Pouska of the Ashtabula City Police Department testified. The trial court overruled Ludwick's motion to suppress.
 {¶ 15} Ludwick filed a motion for a change of venue. Ludwick also filed a motion to dismiss counts seven and eight for failing to state an indictable offense. Both of these motions were overruled by the trial court.
 {¶ 16} A jury trial was held. At trial, following the presentation of the state's case-in-chief, the state moved to amend the bill of particulars to change count four from anal rape to rape by means of fellatio. Defense counsel objected to this change. However, the trial court granted the motion and instructed the jury accordingly. The jury found appellant guilty on counts one, three, four, and seven, as these counts were charged by the trial court. This was one count each of vaginal rape, anal rape, rape by fellatio, and rape by forced digital penetration.
 {¶ 17} Following Ludwick's convictions, the trial court held a sentencing hearing and a sexual predator hearing. The court sentenced Ludwick to a ten-year term for each of his convictions. The court ordered the sentences on counts one and three be served concurrently. The court also ordered the sentences on counts four and seven be served concurrently. The court then ordered the sentences on counts one and three be served consecutively to the sentences on counts four and seven. In addition, the trial court labeled Ludwick a sexual predator.
 {¶ 18} Ludwick raises nine assignments of error. His first assignment of error is:
 {¶ 19} "The trial court erred to the prejudice of the appellant in overruling his motion to suppress."
 {¶ 20} First, Ludwick claims that he was improperly detained and arrested because the police did not have probable cause.
 {¶ 21} To justify a constitutionally valid arrest there must be probable cause "`defined in terms of facts and circumstances "sufficient to warrant a prudent man in believing that the (suspect) had committed or was committing an offense."'"[1]
 {¶ 22} At the time of Ludwick's arrest, the victim informed the police that Ludwick raped her. In addition, the police received a report that Ludwick had taken Erica's vehicle without her permission. Thus, the police had sufficient probable cause to arrest Ludwick, as the circumstances indicated that Ludwick committed two crimes.
 {¶ 23} Also, Ludwick claims the trial court erred by failing to grant his motion to suppress his oral statement.
 {¶ 24} "`In deciding whether a defendant's confession is involuntarily induced, the court should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement.'"[2]
 {¶ 25} These same factors apply when determining if a defendant voluntarily waived their Miranda rights.[3]
 {¶ 26} At the suppression hearing, the state presented, as an exhibit, a Miranda rights waiver form signed by Ludwick. Detective Pouska testified that, while Ludwick was in custody, Ludwick initiated the conversation by requesting to speak to him. He further testified that he did not make any threats or promises to Ludwick. Through cross-examination of Detective Pouska, defense counsel infers that another officer may have made threats or promises to Ludwick. However, Detective Pouska did not have any knowledge of these alleged occurrences, and the defense did not call any witnesses to establish this theory. Ludwick did not testify at this hearing.
 {¶ 27} The defense failed to present any evidence to show that Ludwick's statement was not given voluntarily. In addition, the testimony of Detective Pouska indicates the statement was given voluntarily. Therefore, the trial court did not err by overruling Ludwick's motion to suppress. Moreover, in his brief, Ludwick argues that "any alleged statements" should have been suppressed, but does not direct this court to any point in the record where a specific statement was used against him at trial. Thus, Ludwick failed to show that he was prejudiced by the perceived error of the trial court.
 {¶ 28} Ludwick's first assignment of error is without merit.
 {¶ 29} Ludwick's second assignment of error is:
 {¶ 30} "The trial court erred to the prejudice of the appellant on many evidentiary issues in violation of the applicable provisions of the Ohio Rules of Evidence and appellant's right to a fair trial under the Due Process Clause of the United States and Ohio Constitutions."
 {¶ 31} Ludwick asserts the trial court made several erroneous evidentiary rulings during the trial. Initially, we note that the admission of evidence is left to the sound discretion of the trial court.[4] As such, a decision may not be overturned by a reviewing court absent an abuse of that discretion.[5]
"The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."[6]
 {¶ 32} Ludwick claims the trial court erred by limiting his cross-examination of the victim. Defense counsel sought to question the victim about the alleged McDonald's conversation, when the victim reportedly told Erica she thought Ludwick was cute. As the state notes, the trial court did not prohibit defense counsel from asking the victim about this conversation. The trial court merely informed defense counsel that if he asked questions about this conversation, it would "open the door" for the state to ask additional questions regarding this conversation. The trial court explained that it was unfair to allow a small portion of the conversation to be introduced, which could be taken out of context. After this warning from the trial court, defense counsel apparently made a decision to avoid the topic entirely. We cannot say the trial court abused its discretion in its ruling regarding this issue.
 {¶ 33} Ludwick asserts that Dr. Oelhaf's testimony did not meet the required probability requirements of Evid.R. 702(A). This court has held that "`there is no requirement that an expert utter any "magic language," i.e., that his opinion was within the reasonable degree of certainty or reasonable degree of certainty within the particular knowledge of his professional experience.'"[7]
 {¶ 34} Moreover, the Supreme Court of Ohio has relaxed the traditional probability requirements. Specifically, the court believes "the better practice, especially in criminal cases, is to let experts testify in terms of possibility."[8] We note that some cases have questioned whether the possibility requirement of D'Ambrosio is still controlling law in light of the Supreme Court of Ohio's holding in Stinson v.England.[9] Stinson v. England, decided afterD'Ambrosio, was a medical malpractice case and held that an expert's testimony was required to be stated in terms of probability.[10] However, Stinson v. England did not expressly overturn D'Ambrosio. In addition, the Supreme Court of Ohio has recognized the "possibility" requirement in criminal cases decided subsequent to the Stinson v. England
holding.[11]
 {¶ 35} Dr. Oelhaf opined that, based on his own observations and examination of the victim, it was possible that the victim's version of the events, that she had been subjected to nonconsensual sexual acts, was credible. Specifically, he stated that there was rectal tearing and the victim could not tolerate the pain his examination produced, so an anesthesia had to be used to determine the full extent of her injury. The trial court did not abuse its discretion by permitting this testimony from Dr. Oelhaf.
 {¶ 36} Ludwick also argues Dr. Oelhaf's statement that "I think it's fair to say she's one of my most significantly injured rape victims" was improperly admitted. However, Ludwick does not provide any argument or legal authority in support of his contention. Therefore, we cannot conclude the trial court abused its discretion by admitting this statement.
 {¶ 37} Next, Ludwick contends that Dr. Sandra Cook's testimony was inadmissible hearsay. Dr. Cook testified that she treated the victim in January 2001, and the victim told her she was brutally raped.
 {¶ 38} Statements made for the purposes of medical diagnosis or treatment are admissible as a hearsay exception.[12] The purpose of this exception is the belief that a person will tell a medical professional the truth in order to receive the best care during treatment.[13]
 {¶ 39} The victim was treated for depression. Thus, her statement that she was raped within the past year was made for the purpose of medical diagnosis or treatment. Therefore, the trial court did not err by admitting the statement. We are concerned with the choice of words by Dr. Cook, stating that the victim was "brutally raped." However, the trial court was also disturbed by this testimony, as it sustained an objection and instructed the state to place another question. However, the trial court did not strike the statement.
 {¶ 40} Ludwick argues that the trial court erred by allowing Janet Fowkes to testify that the victim had been raped. Hearsay statements made to a social worker are admissible if they are made for the purposes of medical diagnosis or treatment.[14] Evid.R. 803(4) applies to statements made for the purpose of medical diagnosis or treatment of a physical or psychological condition.[15] One month after the incident on the beach, the victim went to visit Janet Fowkes because she had symptoms of posttraumatic stress disorder. The fact that an individual was recently raped is relevant to the medical diagnosis or treatment when given to a mental health professional. Janet Fowkes was a medical professional and could refer the victim to a licensed medical doctor if she believed that was a necessary part of treatment. In fact, Janet Fowkes referred the victim to Dr. Cook for subsequent treatment. The victim's statement to Janet Fowkes was made for the purpose of medical diagnosis or treatment.
 {¶ 41} We cannot say the trial court abused its discretion in its evidentiary rulings on the testimony of Dr. Cook and Janet Fowkes. However, the manner in which this evidence was introduced by the state is troubling. The state presented both of these witnesses as rebuttal witnesses and the questioning of both witnesses was very brief. It appears that the state wanted to put two respected individuals on the witness stand just before the close of the evidence to say "the victim was raped." This testimony was unnecessary. However, we cannot say that this rises to an abuse of discretion on the part of the trial court.
 {¶ 42} Ludwick asserts that the trial court erred by admitting the hospital records because they contained information that was beyond the scope of medical diagnosis or treatment. Specifically, Ludwick claims the reports contain references to the underlying details of the events at the beach and references to him as the perpetrator.
 {¶ 43} A review of the hospital records reveals that the background details of the events on the beach are short and general. Thus, they all fall within the realm of the hearsay exception for medical diagnosis or treatment. The trial court did exclude an entire page of narrative material from the records. In addition, at trial, the state indicated it removed Ludwick's name from the records using whiteout. Ludwick does not specifically direct this court to a place in the hospital records where his name is revealed. In addition, a review of the hospital records did not reveal his name.
 {¶ 44} Even if Ludwick's name was mentioned in the hospital records, this error was harmless beyond a reasonable doubt. The question of who had sexual conduct with the victim that night was not in question. At trial, the victim specifically identified Ludwick as the perpetrator. In addition, Ludwick testified on his own behalf. His defense was that the sexual conduct that occurred between himself and the victim was consensual. Therefore, his identity was not a pertinent issue for the jury. The key issue before the jury was whether the acts were consensual.
 {¶ 45} The trial court did not abuse its discretion by making the above evidentiary rulings. Ludwick's second assignment of error is without merit.
 {¶ 46} Ludwick's third assignment of error is:
 {¶ 47} "The trial court erred to the prejudice of the appellant in not dismissing counts VII and VIII of the indictment for failure to state an offense."
 {¶ 48} The bill of particulars described counts seven and eight as follows:
 {¶ 49} "[7.] The State of Ohio asserts that on or between the 28th day of May, 2000 and May 29, 2000, between 10:20 p.m. and 1:00 a.m. while at the location of Walnut Beach, City of Ashtabula, County of Ashtabula, and State of Ohio, Defendant, Steven Ludwick, did engage in sexual conduct to-wit: Defendant forced adult female victim to digitally penetrate her own anus. Said Defendant purposely compelled said adult female victim by force or threat of force in violation of R.C. 2907.02(A)(2), a felony of the first degree.
 {¶ 50} "[8.] The State of Ohio asserts that on or between the 28th day of May, 2000 and May 29, 2000, between 10:20 p.m. and 1:00 a.m. while at the location of Walnut Beach, City of Ashtabula, County of Ashtabula, and State of Ohio, Defendant, Steven Ludwick, did engage in sexual conduct to-wit: Defendant forced adult female victim to digitally penetrate her own vagina. Said Defendant purposely compelled said adult female victim by force or threat of force in violation of R.C. 2907.02(A)(2), a felony of the first degree."
 {¶ 51} "A motion to dismiss an indictment tests the sufficiency of the indictment."[16] An indictment is required to allege that the defendant has committed a public offense.[17] Accordingly, Ludwick was asserting that Counts 7 and 8 of the indictment were insufficient, because they did not allege that he committed a criminal act.
 {¶ 52} Ludwick was found not guilty of Count 8 of the indictment. Therefore, we will focus our analysis of this issue on the trial court's denial of Ludwick's motion to dismiss Count 7 of the indictment.
 {¶ 53} Rape is codified as R.C. 2907.02, which states, in part:
 {¶ 54} "(A)(2) No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."
 {¶ 55} "`Sexual conduct' means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without the privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse."[18]
 {¶ 56} Ludwick asserts he could not be charged with rape, because the indictment did not allege that he inserted any object into the victim's vaginal or anal cavity. For the following reasons, we disagree.
 {¶ 57} The state cites two cases where defendants compelled the victims to insert foreign objects into their vaginas.[19] Both cases upheld felonious sexual penetration convictions. The following rationale was applied in these cases:
 {¶ 58} "`When an accused has used an innocent or irresponsible agent to commit a crime, the accused is as guilty as the principal.[20] In such case, the innocent agent is regarded as a mere instrument of the of the originating actor, and the originating actor is accountable for the acts innocent agent.[21] Thus, even though defendant did not directly commit the physical act of inserting the objects into the victims' vaginas, he nevertheless was properly convicted of felonious sexual penetration if he caused the penetration to be committed by an innocent agent.'"[22]
 {¶ 59} Applying this reasoning to the case at bar, Ludwick was properly charged with rape for forcing the victim to insert her finger into her own anus. According to the victim's testimony, Ludwick ordered her to put her finger in her vagina and her rectum. This order was made after Ludwick had threatened the victim and her family and struck her with his fist. Accordingly, the victim testified that she complied with Ludwick's order to digitally penetrate herself because she was afraid of him. The facts of this case are analogous to those ofState v. Alston and State v. Stevens, where the defendants ordered the victims to insert various objects into their vaginal cavities, and the victims complied because they were afraid.[23]
 {¶ 60} We recognize that the defendants in State v. Alston
and State v. Stevens were convicted of felonious sexual penetration, in violation of R.C. 2907.12(A), which stated, in part:
 {¶ 61} "`No person, without privilege to do so, shall insert any part of the body, or any instrument, apparatus, or other object into the vaginal or anal cavity of another when the offender purposely compels the other to submit by force or threat of force.'"[24]
 {¶ 62} Subsequently, R.C. 2907.12 has been repealed. However, we recognize that the offense formerly classified as felonious sexual penetration is currently classified as rape.[25]
Therefore, the rationale of State v. Stevens, adopted by this court in State v. Alston, remains the appropriate authority on this issue.
 {¶ 63} Count seven alleged that Ludwick committed acts which constitute rape. Thus, the trial court did not err by denying Ludwick's motion to dismiss Count 7 of the indictment.
 {¶ 64} Ludwick's third assignment of error is without merit.
 {¶ 65} Ludwick's fourth assignment of error is:
 {¶ 66} "The trial court erred to the prejudice of the appellant as a fair and impartial jury was not empanelled."
 {¶ 67} Ludwick asserts the trial court erred by not granting his motion for a change of venue.
 {¶ 68} The decision to grant a motion for change of venue is left to the discretion of the trial court.[26] The Supreme Court of Ohio held that the trial court in State v. Lundgren
did not abuse its discretion in denying a motion to change venue.[27] In Lundgren, there were two hundred twenty-seven Lundgren-related articles in the Lake County News Herald and one hundred twenty-three articles in the Cleveland Plain Dealer.[28] Compared to Lundgren, the publicity in this matter was relatively minimal. Thus, we cannot say the trial court abused its discretion by overruling Ludwick's motion for change of venue.
 {¶ 69} Next, Ludwick argues that he received an unfair trial due to the bias of several jurors. He claims the trial court should have excused these jurors for cause.
 {¶ 70} After the initial jury selection, Ludwick filed a motion for a mistrial due to a newspaper article. The trial court granted this motion. The trial was continued, and a new jury was impaneled.
 {¶ 71} A trial court has discretion to determine if a jury can serve impartially.[29] Ludwick claims that several jurors knew members of the victim's family or one of the officers involved in the case. We note that all of the jurors stated that these relationships were merely acquaintances and that they had not had contact with the individuals in years. In addition, they all indicated that these relationships would not have an impact on their ability to be fair and impartial. The trial court took appropriate measures to ensure that the jury was composed of fair and impartial members. We cannot say the trial court abused its discretion in this regard. We also note that the trial court did grant a mistrial during the first trial of this case, due to a biased newspaper article that some of the jurors had seen. This indicates the trial court would have taken appropriate action had it determined there was a new problem regarding juror impartiality.
 {¶ 72} Ludwick's fourth assignment of error is without merit.
 {¶ 73} Ludwick's fifth assignment of error is:
 {¶ 74} "The verdict is against the manifest weight of the evidence and contrary to law."
 {¶ 75} Ludwick asserts the jury's verdict is against the manifest weight of the evidence. In determining whether a verdict is against the manifest weight of the evidence, the Supreme Court of Ohio has adopted the following language as a guide:
 {¶ 76} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."[30]
 {¶ 77} At trial, the only two individuals who actually know what occurred that night on the beach, Ludwick and the victim, both testified. It is undisputed that the two individuals engaged in sexual activity. The victim stated the sexual acts were against her will. Ludwick testified these acts were consensual. We cannot say that the jury lost its way and created a manifest miscarriage of justice by choosing to believe the victim rather than Ludwick. Thus, Ludwick's convictions are not against the manifest weight of the evidence.
 {¶ 78} Ludwick's fifth assignment of error is without merit.
 {¶ 79} Ludwick's sixth assignment of error is:
 {¶ 80} "The trial court erred to the prejudice of the appellant by sentencing him to the maximum sentence of ten (10) years each on counts one and three and four and seven."
 {¶ 81} R.C. 2929.14(C) applies to the imposition of maximum sentences and provides:
 {¶ 82} "Except as provided in division (G) of the section or in Chapter 2925. of the Revised Code, the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section."
 {¶ 83} In addition, R.C. 2929.19 provides, in part:
 {¶ 84} "(B)(2) The court shall impose a sentence and shall make a finding that gives its reasons for selecting the sentence imposed in any of the following circumstances:
 {¶ 85} "* * *
 {¶ 86} "(d) If the sentence is for one offense and it imposes a prison term for the offense that is the maximum prison term allowed for that offense by division (A) of section 2929.14 of the Revised Code, its reasons for imposing the maximum prison term[.]"
 {¶ 87} Thus, "[i]n order to lawfully impose the maximum term for a single offense, the record must reflect that the trial court imposed the maximum sentence based on the offender satisfying one of the listed criteria in R.C.2929.14(C)."[31] In addition, R.C. 2929.19(B)(2)(d) requires a trial court to make a finding that sets forth its "`reasons for imposing the maximum prison term.'"[32]
 {¶ 88} At the sentencing hearing, the trial court made the following findings:
 {¶ 89} "Looking at the seriousness and recidivism factors in the statute, along with the actual facts in this case, I think it's pretty clear that there was significant physical injury, as well as testimony of mental or psychological injury to the victim.
 {¶ 90} "I've already pointed out you have a continuous criminal history, as well as a prior sexual offense from when you were only 17 years old and the fact you have served a prior prison term.
 {¶ 91} "I think the threats of harm that were made directly to the victim in this case, as well as the extensive conduct and the brutality of the offense in this case, again, indicate a high likelihood that you will reoffend at your first opportunity.
 {¶ 92} "And in order to protect the public as well as not to demean the seriousness of the crime, I do find that the shortest term would not be sufficient. That it would demean the seriousness of the crime and I'm never quite sure, in my own mind, when you're talking about a rape, especially a rape of this nature, how much worse you can get before it's the worst form of the offense.
 {¶ 93} "In my opinion, I think this is the worst form of the offense and I think that your criminal history, as well as your conduct in this case, has demonstrated the greatest likelihood that you will commit future crimes and that it warrants imposition of the * * * maximum penalty for the offense."
 {¶ 94} The trial court adequately complied with the sentencing statutes when it provided its findings in support of its imposition of the maximum sentences.
 {¶ 95} Ludwick's sixth assignment of error is without merit.
 {¶ 96} Ludwick's seventh assignment of error is:
 {¶ 97} "The trial court erred to the prejudice of the appellant in imposing consecutive sentences."
 {¶ 98} The trial court is required to make certain findings before issuing consecutive sentences. Some of those required findings are set forth in R.C. 2929.14(E)(4), which states:
 {¶ 99} "If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 {¶ 100} "(a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18
of the Revised Code, or was under post-release control for a prior offense.
 {¶ 101} "(b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 {¶ 102} "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
 {¶ 103} In addition to the findings mandated by R.C.2929.14(E)(4), the trial court is required to state its reasons for imposing consecutive sentences pursuant to R.C.2929.19(B)(2)(c), which states:
 {¶ 104} "(B)(2) The court shall impose a sentence and shall make a finding that gives its reasons for selecting the sentence imposed in any of the following circumstances:
 {¶ 105} "* * *
 {¶ 106} "(c) If it imposes consecutive sentences under section 2929.14 of the Revised Code, its reasons for imposing consecutive sentences."
 {¶ 107} In order to comply with these sentencing provisions, the record must contain specific operative facts that indicate the trial court considered the statutory factors in its sentencing decision.[33] Moreover, a mere repetition of the statutory language is insufficient without an analysis of how the defendant's conduct met the factors contained therein.[34]
"The verb `finds,' as used in R.C. 2929.14(E)(4), means that `the court engaged in the analysis' called for by the statute."[35]
 {¶ 108} The Supreme Court of Ohio has recently held, "[p]ursuant to R.C. 2929.14(E)(4) and 2929.19(B)(2)(c), when imposing consecutive sentences, a trial court is required to make its statutorily enumerated findings and give reasons supporting those findings at the sentencing hearing."[36]
 {¶ 109} On the record, at the sentencing hearing, the trial court made the following findings regarding consecutive sentences:
 {¶ 110} "But I do think that consecutive sentences are necessary to adequately protect the public from future crime by you and not to demean the seriousness of the offenses. I think that consecutive sentences are not disproportionate to the seriousness of your conduct in this case or the danger that you pose.
 {¶ 111} "I believe that the harm that the victim suffered in this case was unusual. I think that the multiple events, as well as the threats towards her and the actual injury that was inflicted upon her and the cruelty that I've already pointed out are sufficient to show that a single sentence would not adequately reflect the seriousness of your conduct or, otherwise, protect the public."
 {¶ 112} The trial court sufficiently complied with the sentencing statutes by specifically stating its findings in support of consecutive sentences on the record.
 {¶ 113} Ludwick's seventh assignment of error is without merit.
 {¶ 114} Ludwick's eighth assignment of error is:
 {¶ 115} "The trial court erred in entering a judgment of conviction for four (4) counts of rape and in imposing multiple sentences in violation of appellant's rights under the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution [and] Ohio Revised Code Section 2941.25."
 {¶ 116} Ludwick argues that he should not have received four convictions and sentences, because all of the acts took place on the beach and it was a continuing course of conduct, so the crimes were allied offenses of similar import.
 {¶ 117} Allied offenses of similar import are explained in R.C. 2941.25, which states:
 {¶ 118} "(A) Where the same conduct by a defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 {¶ 119} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."
 {¶ 120} The test for determining if two crimes are allied offenses of similar import is whether the elements of the crimes "correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import."[37] Under this analysis, the elements of the crimes are to be compared in the abstract.[38]
 {¶ 121} In this case, we must determine whether vaginal rape, anal rape, rape by fellatio, and rape by means of forcing the victim to digitally penetrate her anus are allied offenses of similar import. The Supreme Court of Ohio has held that crimes involving vaginal intercourse, cunnilingus, and digital penetration are not allied offenses of similar import.[39]
In Nicholas, as in the case sub judice, all of the acts occurred during a relatively short period of time. The court's rationale was that the three crimes involved separate and distinct sexual activity.[40]
 {¶ 122} Ludwick was convicted of one count anal rape, one count vaginal rape, one count of rape by fellatio, and one count of rape by means of forcing the victim to digitally penetrate her anus. These are distinct and separate sexual acts. Therefore, the trial court did not err by convicting and sentencing Ludwick on all four counts.
 {¶ 123} Ludwick's eighth assignment of error is without merit.
 {¶ 124} Ludwick's ninth assignment of error is:
 {¶ 125} "The trial court erred to the prejudice of appellant in classifying him as a sexual predator."
 {¶ 126} A trial court has to determine by clear and convincing evidence that the offender is a sexual predator.[41] In making its determination, a trial court should consider all relevant factors, which include, but are not limited to, the following:
 {¶ 127} "(1) [T]he offender's age; (2) the offender's prior criminal record; (3) the age of the victim; (4) whether the sexually oriented offense for which sentence was imposed involved multiple victims; (5) whether the offender used drugs or alcohol to impair the victim or to prevent the victim from resisting; (6) whether the offender has participated in available programs for sexual offenders; (7) any mental illness or mental disability of the offender; (8) the nature of the offender's conduct and whether that conduct was part of a demonstrated pattern of abuse; (9) whether the offender displayed cruelty during the commission of the crime; and (10) any additional behavioral characteristics that contributed to the offender's conduct."[42]
 {¶ 128} "Even though the trial court is not required to refer to each factor in making its determination, the court is required to provide a general discussion of the factors so that the substance of the determination can be properly reviewed for purposes of appeal. * * * Such a discussion can be set forth on the record during the sexual offender hearing or in the court's judgment entry."[43]
 {¶ 129} The transcript of the sentencing and sexual predator hearing, the court made several findings relating to the sexual predator findings. Specifically, the trial court noted: that Ludwick had a prior sex offense as a juvenile; that he had never completed the sex offender rehabilitation program; and that Dr. Fabian testified on behalf of the state and opined that Ludwick was a high risk to reoffend. The trial court also found there was evidence of cruelty and threats to the victim in the instant offense.
 {¶ 130} These findings support the trial court's determination, by clear and convincing evidence, that Ludwick is a sexual predator.
 {¶ 131} Ludwick's ninth assignment of error is without merit.
 {¶ 132} The judgment of the trial court is affirmed.
Judgment affirmed.
Ford, P.J., and Grendell, J., concur.
[1] State v. Tibbetts (2001), 92 Ohio St.3d 146, 153, quotingGerstein v. Pugh (1975), 420 U.S. 103, 111-112, quoting Beckv. Ohio (1964), 379 U.S. 89, 91.
[2] State v. Twyford (2002), 94 Ohio St.3d 340, 360, quotingState v. Edwards (1976), 49 Ohio St.2d 31, paragraph two of the syllabus, vacated in part on other grounds (1978), 438 U.S. 911.
[3] Id., citing State v. Green (2000), 90 Ohio St.3d 352,366.
[4] State v. Kinley (1995), 72 Ohio St.3d 491, 497.
[5] (Citations omitted.) Peters v. Ohio State Lottery Comm.
(1992), 63 Ohio St.3d 296, 299.
[6] State v. Adams (1980), 62 Ohio St.2d 151, 157.
[7] State v. Demetris, 11th Dist. No. 2001-T-0025, 2002-Ohio-3711, at ¶ 70, quoting Coe v. Young (2001),145 Ohio App.3d 499, 504.
[8] State v. D'Ambrosio (1993), 67 Ohio St.3d 185, 191, citing Giannelli, Ohio Evidence Manual (1988) 98 Section 702.05, and Jacobs, Ohio Evidence (1989) 168, Section 702-03.
[9] State v. Brant (Sept. 22, 1995), 11th Dist. No. 94-P-0117, 1995 Ohio App. LEXIS 4121, at *17-19; Lay v. Wilson
(May 29, 1996), 1st Dist. No. C-950561, 1996 Ohio App. LEXIS 2202, at *8-9, fn. 1.
[10] Stinson v. England (1994), 69 Ohio St.3d 451, paragraph one of the syllabus.
[11] State v. Jones (2000), 90 Ohio St.3d 403, 416; State v.Allen (1995), 73 Ohio St.3d 626, 636.
[12] Evid.R. 803(4).
[13] In re Dustin (Sept. 3, 1999), 11th Dist. No. 98-L-034, 1999 Ohio App. LEXIS 4134, at *13, citing State v. Jett (Mar. 31, 1998), 11th Dist. No. 97-P-0023, 1998 Ohio App. LEXIS 1451; and State v. Dever (1992), 64 Ohio St.3d 401, 407.
[14] Id. at *16.
[15] Id. at *12.
[16] State v. Patterson (1989), 63 Ohio App.3d 91, 95.
[17] Crim.R. 7(B).
[18] R.C. 2907.01(A).
[19] See State v. Alston (June 14, 1996), 11th Dist. No. 94-L-096, 1996 WL 660895; State v. Stevens (Dec. 30, 1994), 9th Dist. No. 16582, 1994 WL 721859.
[20] Lafave and Scott, Criminal Law (2nd Ed. 1986) 570, Section 6.6(a).
[21] Id.
[22] State v. Alston, at *4, quoting State v. Stevens, at *14.
[23] See State v. Alston and State v. Stevens, supra.
[24] State v. Alston, at *1.
[25] See R.C. 2907.02(A)(2) and 2907.01(A).
[26] State v. Yarbrough, 95 Ohio St.3d 227, 2002-Ohio-2126, at ¶ 85, citing State v. Lundgren (1995), 73 Ohio St.3d 474,479.
[27] State v. Lundgren, 73 Ohio St.3d at 479.
[28] Id. at 478.
[29] State v. Nields (2001), 93 Ohio St.3d 6, 20, citingState v. Williams (1983), 6 Ohio St.3d 281, 288.
[30] (Citations omitted.) State v. Thompkins (1997),78 Ohio St.3d 380, 387.
[31] State v. Edmonson (1999), 86 Ohio St.3d 324, 329.
[32] (Emphasis in original.) Id. at 328.
[33] State v. Baldwin (June 29, 2001), 11th Dist. No. 99-A-0069, 2001 Ohio App. LEXIS 2965, at *16, citing State v.Kase (Sept. 25, 1998), 11th Dist. No. 97-A-0083, 1998 Ohio App. LEXIS 4498, at *4.
[34] Id., see, also, State v. Gary (2001),141 Ohio App.3d 194, 197.
[35] State v. Moore (2001), 142 Ohio App.3d 593, 597, quotingState v. Edmonson (1999), 86 Ohio St.3d 324, 326.
[36] State v. Comer, 99 Ohio St.3d 463, 2003-Ohio-4165, at paragraph one of the syllabus.
[37] State v. Blankenship (1988), 38 Ohio St.3d 116, 117.
[38] State v. Rance (1999), 85 Ohio St.3d 632, paragraph one of the syllabus.
[39] State v. Nicholas (1993), 66 Ohio St.3d 431, 435.
[40] Id.
[41] R.C. 2950.09(C)(2)(b).
[42] State v. Naples, 11th Dist. No. 2000-T-0122, 2001-Ohio-8728, citing R.C. 2950.09(B)(2)(a)-(j).
[43] (Citations omitted). State v. Randall (2001),141 Ohio App.3d 160, 165-166.