[Cite as *State v. Daniels*, 2011-Ohio-4899.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
|  | : | Sheila G. Farmer, P.J. |
|  | : | Julie A. Edwards, J. |
| Plaintiff-Appellee | : | Patricia A. Delaney, J. |
|  | : |  |
| -vs- | : | Case No. 10AP070023 |
|  | : |  |
|  | : |  |
| JOHN DANIELS | : | O P I N I O N |
| Defendant-Appellant |  |  |

CHARACTER OF PROCEEDING:      Criminal Appeal from Tuscarawas
County Court of Common Pleas Case
No. 2009 CR 10 0266

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      September 21, 2011

APPEARANCES:

For Plaintiff-Appellee            For Defendant-Appellant

SCOTT DEEDRICK, ESQ.         PATRICIA J. SMITH, ESQ.
Assistant County Prosecutor      114 Barrington Town Square
101 East High Avenue           Suite 188
New Philadelphia, Ohio 44663    Aurora, Ohio 44202

*Edwards, J.*

{¶1} Appellant, John Daniels, appeals a judgment of the Tuscarawas County Common Pleas Court convicting him of one count of unlawful sexual conduct with a minor (R.C. 2907.04(A)) and one count of sexual imposition (R.C. 2907.06(A)(4)). Appellee is the State of Ohio.

<u>STATEMENT OF FACTS AND CASE</u>

{¶2} On July 27, 2009, Lee Ann Hagerty checked into the Ramada Limited, a hotel in Strasburg, Ohio. She was accompanied by her three-year-old daughter and her 15-year-old foster daughter, G.C., who she has since adopted. Hagerty and the two girls went to the hotel pool, located next to the registration desk, after 8:00 p.m. They spent approximately two hours at the pool. During this time, Hagerty engaged in conversation with appellant, who was perched on the edge of the hot tub drinking a beer. He specifically asked Hagerty the age of G.C., and Hagerty told him that G.C. was fifteen years old.

{¶3} At about 10:15 p.m., Lee Ann and her younger daughter left the pool area, but allowed G.C. to stay in the pool until closing time. Lee Ann asked the night auditor working at the hotel desk to keep an eye on G.C. G.C. and appellant were the only two people left in the pool area.

{¶4} G.C. and appellant raced in the pool before moving to the hot tub. While in the hot tub, appellant kissed G.C. on the mouth, untied her bikini top and touched her breast with his mouth and digitally penetrated G.C.'s vagina. He also submerged his head under water and performed cunnilingus on G.C.

{¶5}   The desk staff of the hotel observed the couple kissing in the hot tub and believed they were too close.  A hotel employee wanted to break up the activity in the hot tub as she had been instructed in the past by the manager, so she advised them at about 10:45 p.m. that they had to leave the pool before the 11:00 p.m. closing time so she could add chemicals to the pool water.

{¶6}   Appellant and G.C. left the pool together and went to appellant's room, which was down the hall from G.C.'s room.  When G.C. failed to return to her room in a timely manner, Lee Ann called the front desk.  She was advised that G.C. and a man had become affectionate in the pool and they were asked to leave.

{¶7}   Lee Ann then called the Strasburg police.  After talking to desk staff and obtaining appellant's hotel room number, Patrolman Evan Fisher knocked on appellant's room door.  A voice asked who was at the door, and Patrolman Fisher responded that it was the police.  Appellant answered the door completely naked.  He then closed the door and Patrolman Fisher heard rustling around inside the room.  When appellant opened the door again, he was clothed. G.C. was standing near the bed in the room.

{¶8}   When questioned by the officer at the hotel, G.C. did not disclose sexual activity between herself and appellant.  Appellant claimed that he had taken a shower and they were going to play cards.  When interviewed by a social worker a week later, G.C. disclosed sexual activity in the hot tub. Before the grand jury she again testified as to sexual activity in the hot tub.  However at trial, she testified that in appellant's hotel room, they showered together and he again penetrated her vagina with his finger.  She also testified that they laid on the bed naked and appellant rubbed his penis against her body.

{¶9}   Appellant was indicted on one count of unlawful sexual conduct with a minor and one count of sexual imposition.  The case proceeded to bench trial in the Tuscarawas County Common Pleas Court.  The court did not consider evidence of sexual activity which occurred in the hotel room because the grand jury had not considered such evidence and appellant was not placed on notice of such evidence. The court found appellant guilty on both counts and sentenced him to two years community control for unlawful sexual conduct with a minor and 60 days incarceration for sexual imposition.  Appellant assigns four errors:

{¶10}  "I. THE TRIAL COURT ERRED WHEN IT FOUND THE APPELLANT GUILTY OF SEXUAL IMPOSITION WITHOUT SUFFICIENT EVIDENCE OF CORROBORATION AS REQUIRED BY THE STATUTE.

{¶11}  "II. THE TRIAL COURT ERRED WHEN IT FAILED TO MERGE UNLAWFUL SEXUAL CONDUCT WITH A MINOR AND SEXUAL IMPOSITION AT THE TIME OF SENTENCING WHERE THE OFFENSES WERE ALLIED OFFENSES OF SIMILAR IMPORT.

{¶12}  "III. THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHERE THERE WAS NO CORROBORATING EVIDENCE AND WHERE THE VICTIM ADMITTED TO GIVING FALSE TESTIMONY TO THE GRAND JURY AS WELL AS TESTIFIED TO A NEW VERSION OF EVENTS ON THE DAY OF TRIAL.

{¶13}  "IV. IF THIS COURT FINDS THAT THE ISSUE OF MERGER WAS WAIVED FOR FAILURE OF COUNSEL TO RAISE THE ISSUE AT THE TIME OF SENTENCING, THEN FAILURE TO REQUEST MERGER WAS INEFFECTIVE ASSISTANCE OF COUNSEL."

I

{¶14} In his first assignment of error, appellant argues there was insufficient evidence to corroborate the victim's testimony concerning sexual imposition.

{¶15} An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

{¶16} R.C. 2907.06(A)(4) defines sexual imposition:

{¶17} "(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:

{¶18} "(4) The other person, or one of the other persons, is thirteen years of age or older but less than sixteen years of age, whether or not the offender knows the age of such person, and the offender is at least eighteen years of age and four or more years older than such other person."

{¶19} R.C. 2907.06(B) further provides:

{¶20} "(B) No person shall be convicted of a violation of this section solely upon the victim's testimony unsupported by other evidence."

{¶21} "The corroborating evidence necessary to satisfy R.C. 2907.06(B) need not be independently sufficient to convict the accused, and it need not go to every essential element of the crime charged. Slight circumstances or evidence which tends

to support the victim's testimony is satisfactory." *State v. Economo* , 76 Ohio St.3d 56, 666 N.E.2d 225, 1996-Ohio-426, syllabus.

**{¶22}** In the instant case, Elaine Chewning, the night auditor working in the desk area on the night in question, testified that G.C. and appellant were close together in the hot tub, "probably closer than they should have been." Tr. 85. She told police at the scene that they were "a little too close, kissing and touching." Tr. 111. Another employee, Delores Rose, testified that appellant and G.C. were facing each other in the hot tub and they were close. Tr. 133. She told Ms. Chewning that she had to break them up. Id. She also told police at the scene on July 27, 2009 that appellant and G.C. were kissing. Patrolman Fisher testified that when appellant answered the door to his hotel room, he was completely naked and G.C. was in the room. Although this evidence was not independently sufficient to convict appellant and did not go to every element of the crime, the corroborating evidence did tend to support the victim's testimony. Slight circumstances or evidence tending to support the victim's testimony is sufficient to meet the requirements of R.C. 2907.06(B). *Economo*, supra.

**{¶23}** The first assignment of error is overruled.

II

**{¶24}** In his second assignment of error, appellant argues the court erred in failing to merge the two convictions.

**{¶25}** Because appellant did not object to the lack of merger at the time of the sentencing hearing, our review of this matter would be subject to a plain error standard. *State v. Lemmons*, Delaware App. No. 10-CA-48, 2011-Ohio-3322, ¶39. Notice of plain error is to be taken with the utmost caution, under exceptional circumstances and only

to prevent a manifest miscarriage of justice. *State v. Long* (1978), 53 Ohio St.2d 91, paragraph 3 of the syllabus.

{¶26} R.C. 2941.25 provides:

{¶27} "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

{¶28} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

{¶29} Recently, the Ohio Supreme Court, in *State v. Johnson,* 128 Ohio St.3d 153, 942 N.E.2d 1061, 2010-Ohio-6314, modified the test for determining whether offenses are allied offenses of similar import. In *Johnson,* the Ohio Supreme Court directed us to look at the elements of the offenses in question and determine whether or not it is possible to commit one offense and commit the other with the same conduct. If the answer to such question is in the affirmative, the court must then determine whether or not the offenses were committed by the same conduct. If the answer to the above two questions is yes, then the offenses are allied offenses of similar import and will be merged. If, however, the court determines that commission of one offense will never result in the commission of the other, or if there is a separate animus for each offense, then the offenses will not merge according to *Johnson,* supra.

{¶30} Unlawful sexual conduct with a minor is defined by R.C. 2907.04(A):

{¶31} "(A) No person who is eighteen years of age or older shall engage in sexual conduct with another, who is not the spouse of the offender, when the offender knows the other person is thirteen years of age or older but less than sixteen years of age, or the offender is reckless in that regard."

{¶32} Sexual conduct is defined by R.C. 2907.01(A):

{¶33} "(A) 'Sexual conduct' means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse."

{¶34} Appellant was also convicted of sexual imposition:

{¶35} "(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:

{¶36} " (4) The other person, or one of the other persons, is thirteen years of age or older but less than sixteen years of age, whether or not the offender knows the age of such person, and the offender is at least eighteen years of age and four or more years older than such other person." R.C. 2907.06(A)(4).:

{¶37} Sexual contact is defined by R.C. 2907.01(B):

{¶38} "(B) 'Sexual contact' means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the

person is a female, a breast, for the purpose of sexually arousing or gratifying either person."

**{¶39}** This Court has previously held that different sexual acts occurring in the same encounter are not allied offenses of similar import. *State v. Jones*, Licking App. No. 09-CA-95, 2010-Ohio-2243 (unlawful sexual conduct with a minor by digital penetration and cunnilingus were not allied offenses of similar import when committed in a short time span); *State v. Waters,* 5th Dist. No. 03-COA-002, 2003-Ohio-4624 (finding that unlawful sexual conduct with a minor by vaginal intercourse and/or digital penetration and fellatio or cunnilingus were not allied offenses of similar import); see also *State v. Brown,* 3rd Dist. No. 9-09-15, 2009-Ohio-5428; and *State v. Ludwick,* 11th Dist. No. 2002-A-0024, 2004-Ohio-1152.

**{¶40}** Clearly it is possible to commit sexual conduct and sexual contact with the same conduct. However, in the instant case, appellant committed sexual contact with G.C. in the hot tub when he touched her breast with his mouth, thereby completing the crime of sexual imposition. He then digitally penetrated her vagina and performed cunnilingus on her, both of which constitute sexual conduct required for a conviction of unlawful sexual conduct with a minor. While the acts occurred in a short span of time, they are separate acts, each with a separate animus. Therefore, the convictions were not supported by the same conduct and pursuant to *Johnson*, supra, the crimes are not allied offenses of similar import in the instant case.

**{¶41}** The second assignment of error is overruled.

III

{¶42} Appellant argues that the conviction is against the manifest weight of the evidence because the victim admitted to giving false testimony to the grand jury and testified to a new version of the facts on the day of trial. He also argues there was no corroborating evidence.

{¶43} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541, 1997-Ohio-52, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.

{¶44} Appellant was convicted of unlawful sexual conduct with a minor and sexual imposition. The statutory definitions of both crimes are set forth in the second assignment of error.

{¶45} At about 10:15 p.m., Lee Ann and her younger daughter left the pool area, but allowed G.C. to stay in the pool until closing time. Lee Ann asked the night auditor working at the hotel desk to keep an eye on G.C. G.C. and appellant were the only two people left in the pool area. Lee Ann and G.C. both testified that appellant was told that G.C. was only 15 years old.

{¶46} G.C. testified that she and appellant raced in the pool before moving to the hot tub. While in the hot tub, appellant kissed G.C. on the mouth, untied her bikini top

and touched her breast with his mouth and digitally penetrated G.C.'s vagina. She also testified that he submerged his head under water and performed cunnilingus on G.C.

{¶47} The desk staff of the hotel observed the couple kissing in the hot tub and believed they were too close. A hotel employee wanted to break up the activity in the hot tub as she had been instructed in the past by the manager, so she advised them at about 10:45 p.m. that they had to leave the pool before the 11:00 p.m. closing time so she could add chemicals to the pool water.

{¶48} Appellant and G.C. left the pool together and went to appellant's room, which was down the hall from G.C.'s room. When G.C. failed to return to her room in a timely manner, Lee Ann called the front desk. She was advised that G.C. and a man had become affectionate in the pool and they were asked to leave.

{¶49} Lee Ann then called the Strasburg police. After talking to desk staff and obtaining appellant's hotel room number, Patrolman Evan Fisher knocked on appellant's room door. A voice asked who was at the door, and Patrolman Fisher responded that it was the police. Appellant answered the door completely naked. He then closed the door and Patrolman Fisher heard rustling around inside the room. When appellant opened the door again, he was clothed. G.C. was standing near the bed in the room.

{¶50} When questioned by the officer at the hotel, G.C. did not disclose sexual activity between herself and appellant. Appellant claimed that he had taken a shower and they were going to play cards. When interviewed by a social worker a week later, G.C. disclosed sexual activity in the hot tub. Before the grand jury she again testified as to sexual activity in the hot tub. However at trial, she testified that in appellant's hotel room, they showered together and he again penetrated her vagina with his finger. She

also testified that they laid on the bed naked and appellant rubbed his penis against her body.

**{¶51}** While G.C. did continue to add to the events of the evening as time went on, she testified that at first she didn't want to get in trouble or get appellant in trouble. Tr. 39. She testified that she was afraid to tell everything to the grand jury and to the caseworker. Tr. 93. G.C. was a foster child who had only been placed with Lee Ann Hagerty for a month at the time of the incident. She lived in Montgomery County and had to travel to Tuscarawas County to testify before the grand jury and at trial. The court did not lose its way in finding G.C.'s testimony credible in spite of the fact that she revealed new details gradually over time.

**{¶52}** The third assignment of error is overruled.

IV

**{¶53}** In his final assignment of error, appellant argues counsel was ineffective for failing to ask for merger of the two convictions.

**{¶54}** A properly licensed attorney is presumed competent. *State v. Hamblin* (1988), 37 Ohio St.3d 153, 524 N.E.2d 476. Therefore, in order to prevail on a claim of ineffective assistance of counsel, appellant must show counsel's performance fell below an objective standard of reasonable representation and but for counsel's error, the result of the proceedings would have been different. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Bradley* (1989), 42 Ohio St.3d 136. In other words, appellant must show that counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. Id.

{¶55} As discussed in the second assignment of error, the two offenses were supported by separate conduct and separate animus and therefore were not allied offenses of similar import.  Appellant, therefore, cannot show a change in the outcome of the proceedings had counsel objected.

{¶56}  The fourth assignment of error is overruled.

{¶57} The judgment of the Tuscarawas County Common Pleas Court is affirmed.



By: Edwards, J.

Farmer, P.J. and

Delaney, J. concur

_____

_____

_____

                                                    JUDGES

JAE/r0707

[Cite as *State v. Daniels*, 2011-Ohio-4899.]

IN THE COURT OF APPEALS FOR TUSCARAWAS COUNTY, OHIO

FIFTH APPELLATE DISTRICT

STATE OF OHIO                          :
                                       :
           Plaintiff-Appellee        :
                                       :
                                       :
-vs-                                   :          JUDGMENT ENTRY
                                       :
JOHN DANIELS                           :
                                       :
           Defendant-Appellant       :          CASE NO. 10AP070023


For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Tuscarawas County Court of Common Pleas is affirmed. Costs assessed to appellant.

 

_____

_____

_____

                                JUDGES