**[Cite as *State v. Jones*, 2022-Ohio-3644.]**

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | | |
|---|---|---|---|
| STATE OF OHIO, | : | | JUDGES: |
| | : | | Hon. Earle E. Wise, P.J. |
| Plaintiff - Appellee | : | | Hon. Patricia A. Delaney, J. |
| | : | | Hon. Craig R. Baldwin, J. |
| -vs- | : | | |
| | : | | |
| DARRELL H. JONES, | : | | Case No. 2021CA00141 |
| | : | | |
| Defendant - Appellant | : | | O P I N I O N |

CHARACTER OF PROCEEDING:          Appeal from the Stark County Court
                                                          of Common Pleas, Case No. 2021
                                                          CR 0250

JUDGMENT:          Affirmed

DATE OF JUDGMENT:          October 11, 2022

APPEARANCES:

For Plaintiff-Appellee                              For Defendant-Appellant

KYLE L. STONE                                      DAVID L. SMITH
Prosecuting Attorney                              931 Bedford Ave., SW
Stark County, Ohio                                 Canton, Ohio 44710

By: VICKI L. DESANTIS
Assistant Prosecuting Attorney
110 Central Plaza South, Ste. 510
Canton, Ohio 44702-1413

*Baldwin, J.*

{¶1}   Defendant-appellant Darrell Jones appeals his conviction and sentence from the Stark County Court of Common Pleas. Plaintiff-appellee is the State of Ohio.

### STATEMENT OF THE FACTS AND CASE

{¶2}   On February 9, 2021, the Stark County Grand Jury indicted appellant on two counts of rape in violation of R.C. 2907.02(A)(1)(b)(B), felonies of the first degree, and one count of gross sexual imposition in violation of R.C. 2907.05(A)(4)(C)(2), a felony of the third degree.  At his arraignment on June 4, 2021, appellant entered a plea of not guilty to the charges.

{¶3}   Subsequently, a jury trial commenced on November 1, 2021. The following testimony was adduced at trial.

{¶4}   E.P. is the mother of three children including R.P. (DOB 12/20/07).  In May of 2020, E.P. was residing in North Canton along with appellant and her two daughters, including R.P.  The two daughters slept in their own bedroom and appellant and E.P. slept in a bedroom across the hall. E.P. worked at Mercy Hospital on twelve hour day shifts, usually Monday through Thursday.

{¶5}   Appellant moved out of the apartment in September of 2020. E.P. testified that after appellant moved out of the apartment, R.P. told her that appellant had been sexually abusing her. E.P. then called the police and got Children Serves involved. She identified appellant in open court as her former boyfriend.

{¶6}   On cross-examination, E.P. testified that she and appellant had gotten married, but that it was not legal because appellant, who was already married, had not gotten a divorce.  E.P. testified that R.P. had kept and hidden a towel that appellant used

after he had sex with her and gave it to E.P. who placed it into a plastic bag. E.P. also collected some of R.P.'s clothing and appellant's clothing and gave them to the police.

{¶7} On redirect, E.P. testified that between May and September of 2020, appellant was not working and stayed home with her daughters while she worked. He was alone with the children.

{¶8} R.P. testified that she was 13 years old at the time of the trial. Since her birthday was December 20, 2007, she had turned 13 at the end of the year. R.P. testified that appellant was her mother's boyfriend. She testified that he came into her room, which she shared with her sister, and started touching her in the morning after her mother left for work. She testified that he "put his private part" in her and that he first put his private part in her butt after pulling down her pants. Trial Transcript Volume 1 at 172. She testified that it hurt. She also testified that while in her mother's room, he put his private part inside her vagina. She testified that it "hurt really bad" and that there was blood inside her vagina. Trial Transcript Volume 1 at 174. R.P. testified that she saw white stuff come out of appellant's body. R.P. further testified that while she was in the living room, appellant had her on her knees on the couch and then put his penis into her vagina. She testified that this happened every day and that, at the time, her sister was sleeping and did not wake up. Appellant did not talk to her during any of this. R.P. identified appellant in open court. On cross-examination, R.P. testified that her bed was on one side of her bedroom and her sister's bed was on the other side.

{¶9} The next witness to testify was Detective Chad Marceric who is with the North Canton Police Department. He testified that he was assigned to investigate and that R.P. was 12 years old at the time of the allegations and lived in North Canton. The

Detective testified that he watched R.P.'s forensic interview which was done at the Children's Network. He testified that, during the interview, R.P. alleged vaginal and anal sex with appellant. Detective Marceric collected clothing from E.P. He described underwear that R.P. wore and an orange towel belonging to appellant that was collected. He identified several of the State's exhibits of clothing and testified that both the towel and underwear were sent to Ohio Bureau of Criminal Investigations (BCI) for testing. He testified that at some point, BCI contacted him and told him that there was sufficient DNA on the items for comparison. Detective Marceric then obtained swab DNA samples from appellant and R.P. Detective Marceric identified State's Exhibit 2 as medical records belonging to appellant that indicated that he had been treated for chlamydia on October 6, 2020. When he spoke with appellant, appellant confirmed that he was living at E.P.'s residence and would be home alone with her daughters while their mother worked.

{¶10} Emily Berbari testified that she was employed as an intake worker at Stark County Children Services. She testified that in September of 2020, she was assigned to investigate the sexual abuse allegations in this case against appellant. She testified that R.P. was 12 years old at the time and that a forensic interview was conducted in September of 2020 as well as a medical exam. She testified that R.P. disclosed specific information regarding what she was wearing and described bleeding on her underwear. R.P. also disclosed that appellant had used an orange towel to clean himself up afterward. Berbari testified that she went to the home as well. Berbari testified that R.P. tested positive for chlamydia. On cross-examination, Berbari testified that she spoke with R.P.'s sister and that the sister did not disclose witnessing anything.

{¶11} Kathleen Nduati, a pediatric nurse practitioner with Akron Children's Hospital, testified that she observed a forensic interview of R.P. on September 25, 2020. She testified that, during the interview, R.P. had disclosed anal and vaginal penetration by appellant. Thereafter, portions of the interview were played for the jury. She testified that she conducted a physical examination of R.P. She testified that she found a healed tear of R.P.'s hymen that would only happen during penetrative sex. According to her, there could be bleeding at the time of the sex. Nduati also testified that she tested R.P. for sexually transmitted diseases and that R.P. tested positive for chlamydia. She testified that chlamydia is a bacterial infection transmitted by sexual contact. Nduati then identified State's Exhibit 3-A as a fair and accurate copy of her evaluation and report. Her diagnosis in this case was child sexual abuse. Nduati recommended antibiotics and trauma counseling.

{¶12} On cross-examination, Nduati testified that R.P. said that the sexual contact occurred more than once and had said that she had bled more than one time.

{¶13} Brittani Troyer, a forensic scantest with BCI's biology/DNA section, testified as an expert without objection. She explained the DNA testing process and technique uses by BCI to prevent DNA from transferring from different items onto the next. Troyer testified that she received evidence from Detective Marceric and identified State's Exhibit 4-A as her report. Troyer testified that she used a light source to find stains on the crotch of R.P.'s underwear and the towel that would fluoresce and change color. She then took swabs from those areas and tested them for DNA. Troyer testified that she found more than one person's DNA on the swab from the underwear. The DNA contributors were an unknown female and an unknown male. She further testified that she found acid

phosphate, which is a protein found in body fluids but in highest concentrations in semen. Troyer testified that on the towel there was, in addition to the unknown male and unknown female, an unknown third person sample.

{¶14} Troyer then identified State's Exhibit 4-B as her second report that identified swabs that she had received from Detective Marceric. She testified that she compared the swabs to the DNA identified on the items that were submitted.  She testified that the swab from the crotch of the underwear showed R.P. being consistent with one of the two contributors.  Troyer testified, in relevant part, as follows: "The second individual, Darrell H. Jones, is consistent with that profile, and the estimated frequency of occurrence of the DNA profile in the sperm fractions is rarer than 1 in 1 trillion unrelated individuals." Trial Transcript, Volume 2 at 36. She testified that "I would expect to have to look at the earth's population over 100 times before I found another DNA profile that was consistent with the one on the crotch of the underwear." Trial Transcript, Volume 2 at 36. Troyer explained the process of splitting out fractions of the sample from one type of cell to another, such as sperm cells. She testified that the profile was "found in the sperm fraction of the swab from the crotch of the underwear." Trial Transcript, Volume 2 at 37.

{¶15} Troyer also explained the same process for the swab from the stain on the towel. She testified that finding R.P.'s DNA was 1 in 100 billion related individuals and appellant was rarer than 1 in 1 trillion unrelated individuals.  Troyer testified that the DNA profile for R.P. was consistent with the non-sperm fractions and appellant's DNA profile was consistent with the sperm fraction of that same sample. Troyer testified that the third person's DNA was never tested because she was only given two samples to compare and that her findings were based upon a reasonable degree of scientific certainty. On

cross-examination, Troyer testified that there was no conclusive test for sperm cells. She agreed that DNA can survive an indefinite period of time if the sample is not washed or exposed to any elements and that DNA can at times actually survive a washing machine. She agreed that it could be transferred among family members.

{¶16} At the conclusion of the evidence and the end of deliberations, the jury, on November 2, 2021, found appellant guilty of all of the charges. Pursuant to a Judgment Entry filed on November 10, 2021, appellant was sentenced to ten years to life on each charge of rape. The trial court ordered that the sentences be served consecutively for an aggregate prison sentence of twenty years to life. The trial court also ordered that the charge of gross sexual imposition be merged with the charges of rape.

{¶17} Appellant now appeals, raising the following assignments of error on appeal:

{¶18} "I. THE VERDICTS AND CONVICTION WERE AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF TH EVIDENCE."

{¶19} "II. IF THE CONVICTIONS STAND, THE SENTENCES SHOULD HAVE MERGED AND NOT BEEN ORDERED AS CONSECUTIVE SENTENCES."

I

{¶20} Appellant, in his first assignment of error, argues that his convictions for rape and gross sexual imposition were against the manifest weight and sufficiency of the evidence. We disagree.

{¶21} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991). "The relevant inquiry is whether, after

viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). See also, *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175, 485 N.E.2d 717.

**{¶22}** Appellant, in the case sub judice, was convicted of rape in violation of 2907.02(A)(1)(b)(B) and gross sexual imposition in violation of 2907.05(A)(4)(C)(2). R.C. 2907.02 states, in relevant part, as follows:

**{¶23}** (A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:…

**{¶24}** (b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person…

**{¶25}** (B) Whoever violates this section is guilty of rape, a felony of the first degree. If the offender under division (A)(1)(a) of this section substantially impairs the other person's judgment or control by administering any controlled substance, as defined in

section 3719.01 of the Revised Code, to the other person surreptitiously or by force, threat

of force, or deception, the prison term imposed upon the offender shall be one of the

definite prison terms prescribed for a felony of the first degree in division (A)(1)(b) of

section 2929.14 of the Revised Code that is not less than five years, except that if the

violation is committed on or after March 22, 2019, the court shall impose as the minimum

prison term for the offense a mandatory prison term that is one of the minimum terms

prescribed for a felony of the first degree in division (A)(1)(a) of section 2929.14 of the

Revised Code that is not less than five years. Except as otherwise provided in this

division, notwithstanding sections 2929.11 to 2929.14 of the Revised Code, an offender

under division (A)(1)(b) of this section shall be sentenced to a prison term or term of life

imprisonment pursuant to section 2971.03 of the Revised Code. If an offender is

convicted of or pleads guilty to a violation of division (A)(1)(b) of this section, if the offender

was less than sixteen years of age at the time the offender committed the violation of that

division, and if the offender during or immediately after the commission of the offense did

not cause serious physical harm to the victim, the victim was ten years of age or older at

the time of the commission of the violation, and the offender has not previously been

convicted of or pleaded guilty to a violation of this section or a substantially similar existing

or former law of this state, another state, or the United States, the court shall not sentence

the offender to a prison term or term of life imprisonment pursuant to section 2971.03 of

the Revised Code, and instead the court shall sentence the offender as otherwise

provided in this division. If an offender under division (A)(1)(b) of this section previously

has been convicted of or pleaded guilty to violating division (A)(1)(b) of this section or to

violating an existing or former law of this state, another state, or the United States that is

substantially similar to division (A)(1)(b) of this section, if the offender during or immediately after the commission of the offense caused serious physical harm to the victim, or if the victim under division (A)(1)(b) of this section is less than ten years of age, in lieu of sentencing the offender to a prison term or term of life imprisonment pursuant to section 2971.03 of the Revised Code, except as otherwise provided in this division, the court may impose upon the offender a term of life without parole. If the court imposes a term of life without parole pursuant to this division, division (F) of section 2971.03 of the Revised Code applies, and the offender automatically is classified a tier III sex offender/child-victim offender, as described in that division. A court shall not impose a term of life without parole on an offender for rape if the offender was under eighteen years of age at the time of the offense.

{¶26} In turn, R.C. 2907.05 states, in relevant part, as follows:

{¶27} (A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:

{¶28} (4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person….

{¶29} (C) Whoever violates this section is guilty of gross sexual imposition.

{¶30} (1) Except as otherwise provided in this section, gross sexual imposition committed in violation of division (A)(1), (2), (3), or (5) of this section is a felony of the fourth degree. If the offender under division (A)(2) of this section substantially impairs the judgment or control of the other person or one of the other persons by administering any

controlled substance, as defined in section 3719.01 of the Revised Code, to the person surreptitiously or by force, threat of force, or deception, gross sexual imposition committed in violation of division (A)(2) of this section is a felony of the third degree.

{¶31} (2)  Gross sexual imposition committed in violation of division (A)(4) or (B) of this section is a felony of the third degree. Except as otherwise provided in this division, for gross sexual imposition committed in violation of division (A)(4) or (B) of this section there is a presumption that a prison term shall be imposed for the offense. The court shall impose on an offender convicted of gross sexual imposition in violation of division (A)(4) or (B) of this section a mandatory prison term, as described in division (C)(3) of this section, for a felony of the third degree if either of the following applies:

{¶32} (a)  Evidence other than the testimony of the victim was admitted in the case corroborating the violation;

{¶33} (b)  The offender previously was convicted of or pleaded guilty to a violation of this section, rape, the former offense of felonious sexual penetration, or sexual battery, and the victim of the previous offense was less than thirteen years of age.

{¶34} Appellant, in arguing that his convictions were against the manifest weight and sufficiency of the evidence, notes that the allegations in this case did not arise until after E.P. found out that appellant was still married to another woman who lived out of state and who had a child with appellant. Appellant points out that E.P. is the one who gathered up articles of clothing and personal effects and dropped them off at the police station and that E.P. was upset with appellant because he was married.  Appellant also argues that R.P. and her sister shared a bedroom and that the sister never witnessed any abuse.  With respect to the DNA evidence, appellant argues that it "provided nothing to

the jury to indicate any type of intercourse was had between the parties" and that "DNA evidence freely transfers amongst family members, especially with co-mingled clothes." Appellant also argues that there are no conclusive tests for sperm.

{¶35} However, we find that, viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found that appellant engaged in sexual conduct with R.P. and had sexual contact with her when she was less than 13 years of age.

{¶36} R.C. 2907.01 states, in relevant part, as follows:

{¶37} (A) "Sexual conduct" means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.

{¶38} (B) "Sexual contact" means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person.

{¶39} We find that there was overwhelming evidence of appellant's guilt. R.P. testified that appellant raped her vaginally and anally. She testified that, as a result, she saw blood in her underwear and had pain. She also testified that she saw white stuff on the floor that came from appellant after the rapes had occurred. There was testimony at trial that R.P. was less than 13 years old at the time.

{¶40} We are mindful, that "[c]orroboration of victim testimony in rape cases is not required." *State v. Meeks*, 5th Dist. Stark No. 2014CA00017, 2015-Ohio-1527, 34 N.E.3d

382, ¶ 81, appeal not allowed, 143 Ohio St.3d 1543, 2015-Ohio-4633, 40 N.E.3d 1180, citing *State v. Cuthbert,* 5th Dist. Delaware No. 11CAA070065, 2012-Ohio-4472, 2012 WL 4474720, ¶ 28 and *State v. Johnson,* 112 Ohio St.3d 210–217, 2006-Ohio-6404, 858 N.E.2d 1144, at ¶ 53. Likewise, a victim's testimony concerning penetration need not be corroborated by the medical evidence. *See State v. Nivens*, 10th Dist. Franklin No. 95APA09-1236, 1996 WL 284714, 1996 Ohio App. LEXIS 2245, 6 (May 28, 1996) (even without corroborating medical evidence, a victim's testimony that the perpetrator placed his penis in her vagina constitutes penetration).

**{¶41}** However, in this case, there was testimony that there was a tear in R.P.'s hymen that could only be caused by sexual penetration and that both appellant and R.P. had tested positive for chlamydia, which is sexually transmitted. There also was testimony that appellant's DNA was found in the crotch of R.P.'s underwear and on the towel. There was testimony that the DNA found was not touch DNA but DNA from a bodily fluid. There was testimony that the DNA from R.P.'s underwear tested positive for acid phosphate activity and that acid phosphate was found in semen. This testimony bolstered R.P.'s testimony. There also was testimony that appellant was gratified by the sexual conduct/contact since R.P. testified that she saw white stuff come out of appellant's penis as a result.

**{¶42}** We find, based on the foregoing, that sufficient evidence was presented, beyond a reasonable doubt, that appellant committed the offenses of rape and gross sexual imposition.

**{¶43}** While appellant argues that his convictions are against the manifest weight of the evidence, we note that the weight to be given to the evidence and the credibility of

the witnesses are issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. We find that this is not an " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins*, 78 Ohio St.3d at 387. Upon our review of the entire record in this matter, appellant's convictions for rape and gross sexual imposition are not against the sufficiency or the manifest weight of the evidence.

{¶44} Appellant's first assignment of error is, therefore, overruled.

II

{¶45} Appellant, in his second assignment of error, argues that his sentences for rape should have merged and that the trial court, therefore, erred in imposing consecutive sentences. Appellant contends that the rape charges appear to be a continuing course of conduct, the dates for the allegations are similar in the indictment, and that the rape charges should have been sentenced concurrently. We disagree.

{¶46} Appellate review of an allied-offense question is de novo. *State v. Miku*, 5th Dist. No. 2017 CA 00057, 2018-Ohio-1584, ¶ 70, appeal not allowed, 154 Ohio St.3d 1479, 2019-Ohio-173, 114 N.E.3d 1207 (2019), quoting *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 12.

{¶47} Revised Code 2941.25 protects a criminal defendant's rights under the Double Jeopardy Clauses of the United States and Ohio Constitutions by prohibiting convictions of allied offenses of similar import:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the

indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶48} The application of R.C. 2941.25 requires a review of the subjective facts of the case in addition to the elements of the offenses charged. *State v. Hughes*, 5th Dist. Coshocton No. 15CA0008, 2016-Ohio-880, ¶ 22. In a plurality opinion, the Ohio Supreme Court modified the test for determining whether offenses are allied offenses of similar import. *State v. Johnson*,128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061. The Court directed us to look at the elements of the offenses in question and determine "whether it is possible to commit one offense and the other with the same conduct." (Emphasis sic). *Id.* at ¶ 48. If the answer to such question is in the affirmative, the court must then determine whether or not the offenses were committed by the same conduct. *Id.* at ¶ 49. If the answer to the above two questions is yes, then the offenses are allied offenses of similar import and will be merged. *Id.* at ¶ 50. If, however, the court determines that commission of one offense will never result in the commission of the other, or if there is a separate animus for each offense, then the offenses will not merge. *Id.* at ¶ 51.

{¶49} Johnson's rationale has been described by the Court as "incomplete." *State v. Earley,* 145 Ohio St.3d 281, 2015-Ohio-4615, 49 N.E.3d 266, ¶ 11. The Supreme Court

of Ohio has further instructed us to ask three questions when a defendant's conduct supports multiple offenses: "(1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered." *State v. Ruff,* 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 31.

{¶50} Different sexual acts occurring in the same encounter are not allied offenses of similar import. *See, e.g.*, *State v. Jones*, 5th Dist. Licking No. 09-CA-95, 2010-Ohio-2243 (unlawful sexual conduct with a minor by digital penetration and cunnilingus were not allied offenses of similar import even when committed in a short time span); *State v. Waters*, 5th Dist. Ashland No. 03-COA-002, 2003-Ohio-4624 (unlawful sexual conduct with a minor by vaginal intercourse and/or digital penetration, and fellatio or cunnilingus were not allied offenses of similar import); *State v. Brown*, 3rd Dist. Marion No. 9-09-15, 2009-Ohio-5428 (exposing penis to have victim touch it, touching the victim's breast, and touching victim's vagina with his penis after ejaculation were separate acts and did not merge); *State v. Ludwick*, 11th Dist. Ashtabula No. 2002-A-0024, 2004-Ohio-1152 (vaginal rape, fellatio, and rape by means of forcing the victim to digitally penetrate her anus are not allied offenses); *State v. Kalka,* 8th Dist. Cuyahoga No. 106339, 2018-Ohio-5030 (touching victim's breasts and touching victim's vaginal area are not allied offenses of similar import); *State v. Stites*, 1st Dist. Hamilton No. C-190247, 2020-Ohio-4281(defendant performing cunnilingus on victim and victim performing cunnilingus on defendant are different sex acts and not allied offenses of similar import).

**{¶51}** We find appellant's acts of engaging in vaginal intercourse with R.P. and in engaging in anal intercourse with R.P., even though committed close in time, are different and distinct sexual acts which were committed separately, and are not allied offenses of similar import. There was testimony that the acts occurred in different parts of the house. We find the trial court did not commit plain error in failing to merge the convictions.

**{¶52}** Appellant's second assignment of error is, therefore, overruled.

**{¶53}** Accordingly, the judgment of the Stark County Court of Common Pleas is affirmed.

By: Baldwin, J.

Wise, Earle, P.J. and

Delaney, J. concur.